EDWARD LEE TRAPP, Administrator of the Estate of MARY CATHERINE TRAPP, Deceased, Plaintiff v. GERALD A. MACCIOLI, M.D., Defendant

No. COA97-720

(Filed 7 April 1998)

**Pleadings § 70 (NCI4th)— complaint—medical malpractice— witness within same specialty**

A trial court erred by dismissing a medical malpractice complaint pursuant to N.C.G.S. § 1A-1, Rule 9(j) because the named witness could not reasonably be expected to qualify as an expert under N.C.G.S. § 8C-1, Rule 702 where the procedure involved was a central venous access preparatory to plasmapheresis, defendant is an anesthesiologist, the witness named in accordance with N.C.G.S. § 1A-1, Rule 9(j) is an emergency medicine specialist, the witness testified that he had been involved in inserting a central venous line·and that that procedure was independent of the plasmapheresis procedure, and the trial court concluded that the witness could not be reasonably expected to qualify as an expert under N.C.G.S. § 8C-1, Rule 702. The disqualification of a Rule 9(j) witness under Rule 702 does not necessarily require dismissal of the pleadings; there is ample evidence in this record that a reasonable person armed with the knowledge of the plaintiff at the time of the pleading would have believed that the witness would have qualified as an expert under Rule 702.

Appeal by plaintiff from order filed 7 March 1997 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 17 February 1998.

*Douglass & Douglass, by Thomas G. Douglass, for plaintiff appellant.*

*Patterson, Dilthy, Clay & Bryson, L.L.P., by Robert M. Clay, Mark E. Anderson, and Claire A. Modlin, for defendant appellee.*

GREENE, Judge.

Edward Lee Trapp (plaintiff) appeals from the trial court's dismissal of his suit against Gerald M. Maccioli, M.D. (defendant).

The facts are as follows: On 19 March 1994 Mary Catherine Trapp (Mrs. Trapp) was evaluated by Kenneth Zeitler, M.D., a physician at

Wake Medical Center who recommended a medical procedure called plasmapheresis. Mrs. Trapp was transferred to Rex Hospital where the plasmapheresis procedure was to be performed. In preparing for plasmapheresis, a catheter or hollow plastic tubing is inserted into a vein in the body. This procedure to insert the tubing is called "central venous access" or inserting a "central venous line." On the afternoon of 19 March 1994, the defendant, an anesthesiologist, attempted central venous access into Mrs. Trapp's internal jugular vein on the right side of her neck and was unsuccessful in that location but did succeed elsewhere. A hemotoma developed on Mrs. Trapp's neck and led to further complications which resulted in her death. The plaintiff is the duly qualified administrator of the estate of Mrs. Trapp.

In his complaint, the plaintiff alleged, among other things, that the medical care complained of had "been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care" in accordance with Rule 9(j) of our Rules of Civil Procedure. In answer to the defendant's interrogatories the plaintiff responded that George Podgorny, M.D. (Dr. Podgorny), a licensed physician who is board certified in surgery and specializes in emergency care, had reviewed (prior to the filing of the complaint) the standard of care given to Mrs. Trapp in June of 1994.

At his deposition, Dr. Podgorny testified that he was not board certified in anesthesia or critical care and had no anesthesia training in a residency program. He stated that he, as an emergency medicine specialist, had been the "physician involved in inserting a central venous line" within the past year and that emergency medicine specialists did perform central venous access. He did not know if the central venous accesses he had performed were done specifically on patients who were to then undergo plasmapheresis. According to Dr. Podgorny, surgeons were the most likely to perform central venous access because it was considered a "surgical type activity." He further stated that a central venous access is a "procedure" and that it "is not driven by what is the treatment later on. The procedure is the same." Dr. Podgorny admitted that he had no information as "to the specific requirements with regard to central line access for a patient undergoing plasmapheresis" and "any opinion as to the interplay between the type of central line access which is required for plasmapheresis of a patient [was] something outside of [his] speciality."

**TRAPP v. MACCIOLI**

[129 N.C. App. 237 (1998)]

The defendant filed a motion to dismiss, pursuant to Rule 9(j), alleging that the plaintiff had "failed to identify any physician who practices within the same specialty as [the defendant], as required by Rule 702." In dismissing the complaint, the trial court found, among other things, the following:

> (3) That emergency medicine and trauma is not a practice of medicine similar to anesthesiology and does not include the performance of the procedure complained of in the complaint, specifically the insertion of a central venous line catheter in a patient who is to undergo plasmapheresis;

> (4) That Dr. George Podgorny has had no prior experience treating patients with plasmapheresis; nor has he had any experience inserting the plasmapheresis catheter;

> (5) That the health care services at issue in this case include the insertion of a central line catheter for the purpose of plasmapheresis;

> (6) That the interplay between the type of central line access which is required for plasmapheresis of the patient is outside Dr. George Podgorny's particular specialty;

> . . . .

> (12) That plaintiff made certification in the complaint, pursuant to Rule 9(j), that the medical care complained of had been reviewed by a qualified expert when there was no such qualified expert.

The trial court concluded "as a matter of law that Dr. George Podgorny could not be reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence."

The issue is whether Dr. Podgorny could reasonably be expected to be an expert witness qualified, pursuant to Rule 702, to testify in this medical malpractice action.

Rule 9(j) of the North Carolina Rules of Civil Procedure requires any complaint alleging medical malpractice by a health care provider to specifically assert that the "medical care has been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and that [the expert] is willing to testify that the medical care did not comply with the applicable

standard of care." N.C.G.S. § 1A-1, Rule 9(j) (Supp. 1997). The failure to so certify requires the trial court to dismiss the action. *Id.*

Rule 702 of our Rules of Evidence provides in pertinent part that:

[A] person shall not give expert testimony on the appropriate standard of health care . . . unless the person is a licensed health care provider . . . and meets the following criteria:

(1) If the party against whom or on whose behalf the testimony is offered is a specialist, the expert witness must:

a. Specialize in the same specialty as the party against whom . . . the testimony is offered or

b. Specialize in a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and have prior experience treating similar patients.

N.C.G.S. § 8C-1, Rule 702(b)(1) (Supp. 1997).

A person can qualify as an expert under either Rule 702(b)(1)(a) or 702(b)(1)(b).[1] In this case, Dr. Podgorny did not specialize in "the same specialty" as the defendant and thus did not qualify as an expert witness under Rule 702(b)(1)(a). Dr. Podgorny is an emergency medicine specialist and the defendant is an anesthesiologist.

Rule 702(b)(1)(b) is subdivided into two parts: (1) does the witness "specialize in a similar speciality" which includes "the performance of the procedure that is the subject of the complaint," and if so, (2) does the witness "have prior experience treating similar patients." The evidence before the trial court reveals that the practice of emergency medicine is a speciality "similar" to the practice of anesthesiology, in that both practices include the performance of central venous accesses. It is the contention of the defendant that Dr. Podgorny nonetheless does not satisfy the requirements of Rule 702(b)(1)(b) because the "procedure that is the subject of the complaint" is a central venous access for the specific purpose of plasmapheresis and that Dr. Podgorny admitted that he did not know the standard of care for this type of procedure. The plaintiff contends

---

1. In general terms, Rule 702 also requires that the expert witness "must have devoted [during the year immediately before the occurrence that is the basis of the action] a majority of his or her professional time to either" a clinical practice of the same health profession as the defendant or the instruction of students in the same health profession as the defendant. N.C.G.S. § 8C-1, Rule 702(b)(2). Because resolution of this case does not require that we address this subsection, we do not do so.

TRAPP v. MACCIOLI

[129 N.C. App. 237 (1998)]

that cental venous access is a procedure that is not driven by the treatment that is to follow. Indeed, there is evidence in the record to support that conclusion. The trial court resolved this dispute by determining that there is an interplay between cental venous access and the subsequent treatment of the patient. It therefore follows, the defendant argues, that the plaintiff failed to show that Dr. Podgorny's speciality included "the performance of the procedure that is the subject of the complaint."

Without resolving the question of whether Dr. Podgorny, based on this record, qualifies as an expert under Rule 702(b)(1)(b), and assuming, as the trial court determined, that he does not, the order of the trial court dismissing the complaint must nonetheless be reversed. The disqualification of a Rule 9(j) witness under Rule 702 does not necessarily require the dismissal of the pleadings. The question under Rule 9(j) instead is whether it was "reasonably expected" that the witness would qualify under Rule 702.[2] In other words, were the facts and circumstances known or those which should have been known to the pleader such as to cause a reasonable person to believe that the witness would qualify as an expert under Rule 702. *See Black's Law Dictionary* 1265 (6th ed. 1990) (defining reasonable belief).

In this case, although the trial court ultimately resolved the Rule 702 issue against the plaintiff, there is ample evidence in this record that a reasonable person armed with the knowledge of the plaintiff at the time the pleading was filed would have believed that Dr. Podgorny would have qualified as an expert under Rule 702.

Reversed and remanded.

Judges WALKER and TIMMONS-GOODSON concur.

---

2. Whether the pleader could reasonably expect the witness to qualify as an expert under Rule 702 presents a question of law and is therefore reviewable *de novo* by this Court. This is so because resolution of this issue requires application of legal principles. *See State v. Chaplin*, 122 N.C. App. 659, 664, 471 S.E.2d 653, 656 (1996).